# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**FRED JOHN LORENZ,**

    **Plaintiff,**

    v.

**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**[1]

    **Defendant.**

No. 16 C 9495

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred John Lorenz filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the Commissioner's decision is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2d 973, 977 (N.D. Ill. 2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on January 5, 2015, alleging that he became disabled on January 1, 2015, due to COPD, joint disease, hypertension, acute bronchitis, major depression, and tobacco abuse. (R. at 13, 213). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 13, 68–97, 112–13). On April 6, 2016, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 13, 29–67). The ALJ also heard testimony from Thomas A. Gusloff, a vocational expert (VE). (*Id.* at 13, 59–65, 289).

The ALJ denied Plaintiff's request for benefits on May 16, 2016. (R. at 13–24). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since January 1, 2015, the alleged onset date. (*Id.* at 15). At step two, the ALJ found that Plaintiff's obesity, right hip degenerative joint disease and bursitis, lumbar spondylosis and stenosis, and chronic obstructive pulmonary disease (COPD) are severe impairments. (*Id.* at 15–18). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 13).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that he can perform light work, except he "can frequently but not

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum

constantly balance, kneel and crawl. [Plaintiff] must avoid concentrated exposure to hazards (defined as work at heights) or respiratory irritants." (R. at 18–19; *see id.* at 19–24). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is capable of performing past relevant work as a security guard and cashier. (*Id.* at 24). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.*).

The Appeals Council denied Plaintiff's request for review on August 9, 2016. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a

---

that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

conclusion." *Indoranto v. Barnhart,* 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin,* 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### IV. RELEVANT MEDICAL EVIDENCE

In October 2014, Plaintiff began treating with William D. Clapp, M.D., a pulmonologist, for relief of his wheezing. (R. at 453). Dr. Clapp diagnosed COPD,

prescribed medications, and urged Plaintiff to stop smoking. (*Id.* at 456). In March and September 2015, Dr. Clapp observed shortness of breath, coughing and wheezing. (*Id.* at 477, 592).

In September 2015, Dr. Clapp completed a pulmonary RFC questionnaire. (*Id.* at 528–31). He reported that Plaintiff's symptoms include shortness of breath, chest tightness, wheezing, episodic acute bronchitis, and coughing, all of which are aggravated by an upper respiratory infection, exercise, irritants, and cold air. (*Id.* at 528). Plaintiff has COPD attacks two to three times monthly which incapacitate him several hours and longer. (*Id.* at 529). Dr. Clapp opined that Plaintiff's symptoms are severe enough to cause occasionally interference with attention and concentration. (*Id.*). He further opined that Plaintiff can walk only one block before needing to rest and can stand or walk only about two hours during an eight-hour workday. (*Id.* at 530). Dr. Clapp concluded that Plaintiff can frequently lift less than ten pounds and only occasionally lift ten pounds; can occasionally twist, rarely stoop, crouch or squat, and never climb ladders or stairs. (*Id.*). He estimated that Plaintiff would miss about four days per month because of his impairments. (*Id.* at 531).

In March 2015, Plaintiff began treating with Abed Rahman, M.D., a pain specialist, for lower back and right hip pain, after physical therapy provided only minimal relief. (R. at 480, 485). Dr. Rahman diagnosed right hip degenerative joint disease, right hip trochanteric bursitis, lumbar spondylosis and left anterior thigh hypesthesia, ordered an MRI, and prescribed additional medications. (*Id.* at 489–

90). The May 2015 MRI of Plaintiff's lumbar spine revealed multilevel mild degenerative disc and facet arthropathy, mild central canal stenosis, and mild to moderate stenosis of both neural foramina. (*Id.* at 549–50). Plaintiff received trigger point injections in July 2015. (*Id.* at 510–17, 523–26, 601–07).

Dr. Rahman completed a lumbar spine RFC questionnaire on July 14, 2015. (R. at 523–26). He opined that Plaintiff's pain would cause occasional interference with the attention and concentration needed to perform even simple work tasks. (*Id.* at 524). He concluded that Plaintiff can stand or walk only about two hours in an eight-hour workday. (*Id.* at 525). He further opined that Plaintiff can stoop only rarely. (*Id.* at 526).

On May 5, 2015, Richard Lee Smith, M.D., a nonexamining, DDS consultant, examined the record and concluded that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, or sit about six hours in an eight-hour workday. (R. at 73–76). He further opined that Plaintiff can occasionally stoop. (*Id.* at 74).

On September 3, 2015, Mina Khorshidi, M.D., another nonexamining, DDS consultant examined the record, including the opinions by Drs. Clapp and Rahman, and affirmed Dr. Smith's assessment. (R. at 89–92). Dr. Khorshidi gave "little weight" to the opinions of Drs. Clapp and Rahman "as they are not supported by the evidence in the file." (*Id.* at 90).

## V. DISCUSSION

In support for his request for reversal, Plaintiff argues that the ALJ erred in (1) rejecting Drs. Clapp's and Rahman's opinions, and (2) assessing Plaintiff's RFC. (Dkt. 12 at 6–13).

### A. The ALJ Did Not Properly Evaluate the Treating Physicians' Opinions

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627

F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

### 1. *Dr. Rahman's Opinion*

Dr. Rahman opined that Plaintiff can stand or walk only about two hours in an eight-hour workday and can stoop only rarely. (R. at 525–26). The ALJ rejected this opinion, declining to give it controlling or great weight. (*Id.* at 23).

> [Dr. Rahman] had only seen [Plaintiff] twice when he rendered this opinion (and he has only seen him one more time thereafter). As the state agency reviewing doctors noted, Dr. Rahman's opinion is not supported by the examination or clinical findings. Moreover, the medical evidence consistently shows normal gait, full motor strength and normal bilateral straight leg rising tests. In addition, an MRI of the lumbar spine revealed only mild degenerative disc disease and

> facet arthropathy with mild central canal stenosis and mild to moderate neural foraminal stenosis.

(*Id.*). The Court concludes that the ALJ's evaluation of Dr. Rahman's opinion is legally insufficient and not supported by substantial evidence.

First, the ALJ failed to explain the weight, if any, she assigned to Dr. Rahman's opinion. "When an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what value the treating physician's opinion merits." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *see Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("And even if there had been sound reasons for refusing to give Dr. Tate's assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit."). Second, Dr. Rahman's opinion is consistent with his medical examinations, treatment, and diagnosis. (R. at 460, 490, 515–16, 549–50). Dr. Rahman was the first physician to diagnose and treat Plaintiff's hip impairments. (*Id.* at 489, 515); *see Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (because the treating physician "also happens to be the doctor who first diagnosed Eakin's arthritis, and the only doctor on record to have treated the condition and tracked its progress," his opinion is entitled to considerable weight). Third, Dr. Rahman's opinion is consistent with Dr. Clapp's independent evaluation. (*Compare* R. at 523–26 *with id.* at 528–31).

Finally, the ALJ's decision to give "great weight" to the nontreating, DDS doctors is internally inconsistent and not supported by substantial evidence. Neither of the DDS doctors considered Plaintiff's hip impairment or obesity in

formulating their RFC, despite the ALJ finding both maladies to be severe impairments. (R. at 15, 73–76, 89–92). While neither DDS doctor examined Plaintiff, the ALJ rejected Dr. Rahman's opinion partially based on him having seen Plaintiff on only two occasions. Further, Dr. Rahman is a pain specialist and there is no evidence that either of the DDS doctors are specialists in any field. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

### 2. *Dr. Clapp's Opinion*

Dr. Clapp also opined that Plaintiff can stand or walk only about two hours in an eight-hour workday and can stoop only rarely. (R. at 528–31). The ALJ rejected Dr. Clapp's opinion, declining to assign it either controlling or great weight. (*Id.* at 23).

> [Plaintiff's] condition has been stable with the same medications. Evidence has only shown a few exacerbations, which routinely happened when he was not taking his medications. Moreover, I do not find reason to limit [Plaintiff] to sedentary level of exertion with fifteen-minute breaks every hour. [Plaintiff] testified that he could walk one and one-half miles and he cleans and buffs floors at the AA meetings. He cooks for groups of people and attends AA meetings regularly.

(*Id.* at 23–24) (citation omitted). The Court concludes that the ALJ's evaluation of Dr. Clapp's opinion is legally insufficient and not supported by substantial evidence.

First, as with Dr. Rahman's opinion, the ALJ failed to explain the weight, if any, she assigned to Dr. Rahman's opinion. *Jelinek*, 662 F.3d at 811. Second, the ALJ mischaracterized Dr. Clapp's opinion. The ALJ stated that Dr. Clapp opined that Plaintiff could stand and walk for four hours (R. at 23), when in fact Dr. Clapp

concluded that Plaintiff could stand or walk only two hours in an eight-hour workday (*id.* at 530). Third, the ALJ asserted that Plaintiff's COPD is exacerbated only when he is noncompliant with his medications. (*Id.* at 23). To the contrary, the medical records indicate that Plaintiff's COPD was exacerbated *despite* his use of preventative medications. (*Id.* at 531–35, 567–72, 583–85). Fourth, Dr. Clapp's opinion is consistent with Dr. Rahman's independent evaluation. (*Compare* R. at 523–26 *with id.* at 528–31).

Finally, as discussed above, the ALJ's decision to give "great weight" to the nontreating, DDS doctors is internally inconsistent and not supported by substantial evidence. Dr. Clapp is a pulmonary specialist and there is no evidence that either of the DDS doctors are specialists in any field. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

### *3. Summary*

The ALJ must "sufficiently account [ ] for the factors in 20 C.F.R. 404.1527." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). The ALJ did not do so here, preventing this Court from assessing the reasonableness of the ALJ's decision in light of the factors indicated in 20 C.F.R. § 404.1527. For these reasons, the ALJ did not provide substantial evidence for rejecting Dr. Rahman's and Dr. Clapp's opinions, which is an error requiring remand.

## B. Other Issues

Because the Court is remanding to reevaluate the weight to be given to Drs. Rahman's and Clapp's opinions, the Court chooses not to address Plaintiff's other argument that the ALJ erred in his RFC assessment. (Dkt. 12 at 9–13). However, on remand, after determining the weight to be given to the opinions of Drs. Rahman and Clapp, the ALJ shall then reevaluate Plaintiff's impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse is **GRANTED**, and Defendant's Motion for Summary Judgment [15] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: September 20, 2017          E N T E R:

_Mary M Rowland_
MARY M. ROWLAND
United States Magistrate Judge